IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

SARAH COCHRAN and                                              PLAINTIFFS
TIFFANY WARD

v.                              Case No. 2:20-cv-00134-KGB

BOAR'S HEAD PROVISIONS                                         DEFENDANTS
COMPANY INC., *et al.*

## ORDER

Before the Court is a motion to dismiss or in the alternative motion to sever or order separate trials filed by defendants Boar's Head Provisions Company, Inc. ("Boar's Head"), Patricia Byers, and Gillette Drone (collectively, "defendants") (Dkt. No. 3). Plaintiffs Sarah Cochran and Tiffany Ward (collectively, "plaintiffs") have filed a response (Dkt. No. 9). For the following reasons, the Court grants, in part, and denies, in part, defendants' motion to dismiss or in the alternative motion to sever or order separate trials (Dkt. No. 3).

## I.    Background

Plaintiffs initially filed this action in the Circuit Court of St. Francis County, Arkansas, on May 7, 2020 (Dkt. No. 2). Plaintiffs were both Boar's Head employees when their causes of action arose, and plaintiffs assert that they were terminated discriminatorily in violation of the Arkansas Civil Rights Act of 1993 ("ACRA"), Arkansas Code Annotated § 16-123-107, *et seq.* (*Id.*, ¶ 2). On June 17, 2020, defendants removed this action from the Circuit Court of St. Francis County, Arkansas, to this Court (Dkt. No. 1).

### A.    Ms. Cochran's Allegations

Plaintiffs present Ms. Cochran's cause of action as follows (Dkt. No. 2, ¶¶ 15-21). On September 9, 2019, Ms. Cochran was involved in a car wreck (*Id.*, ¶ 15). Ms. Cochran had

previously undergone extensive lumbar surgery in the form of a spinal fusion, and she experienced immediate pain in that area after the wreck as well as later weakness and paralysis in both her right arm and right leg (*Id.*).  Ms. Cochran was hospitalized for two days at University of Arkansas for Medical Sciences in Little Rock (*Id.*).  Ms. Cochran's daughter called Ms. Byers to inform her that Ms. Cochran was in the hospital; Ms. Cochran's daughter was not informed that company rules required a call each day that Ms. Cochran was in the hospital (*Id.*).  When Ms. Cochran was discharged from the hospital, she called Ms. Byers to ask when she might return to work (*Id.*, ¶ 17).  Ms. Byers said that she would call Ms. Cochran back, but she did not call back for about a week (*Id.*).  On September 18, 2019, Ms. Cochran was informed by the Human Resources Department ("HR") at Boar's Head that she was being terminated for failure to call two days in a row (*Id.*).  Ms. Cochran's Family and Medical Leave Act ("FMLA") coverage, health insurance, AFLAC insurance, and all other benefits were cancelled (*Id.*).

Plaintiffs assert that Ms. Cochran was entitled to be free from discrimination "because . . . the presence of any sensory, mental, or physical disability is recognized as and declared to be a civil right" under Arkansas Code Annotated § 16-123-107(a) (*Id.*, ¶ 18).  Plaintiffs allege that Ms. Cochran was operating under a disability—and defendants regarded her as having a disability—when defendants discriminated against her by firing her and terminating her insurance and other benefits (*Id.*).  Plaintiffs maintain that defendants discriminated against Ms. Cochran by failing to provide her reasonable accommodation under the circumstances and by firing her after her discharge from the hospital, in violation of Arkansas Code Annotated § 16-123-102(3) (*Id.*, ¶¶ 18-19).  Plaintiffs allege that defendants violated Ms. Cochran's right to obtain and hold employment without discrimination in violation of Arkansas Code Annotated § 16-123-102(3) and refused to

provide reasonable accommodation in violation of Arkansas Code Annotated § 16-123-107(a) (*Id.*, ¶ 20).

As a result of defendants' alleged violations, plaintiffs allege that Ms. Cochran has lost a significant sum of income in the past and will continue to do so in the future; stands unable to pay the medical bills she incurred for her treatment and surgery; has lost the fringe benefits of her employment; remains unable to procure employment due to her having been fired by Boar's Head; remains unable to pay her bills, which has caused chaos in her life; and has incurred and will incur substantial attorneys' fees (*Id.*, ¶ 21).

### B.   Ms. Ward's Allegations

Plaintiffs present Ms. Ward's cause of action as follows (Dkt. No. 2, ¶¶ 3-14).  Ms. Ward presented to the emergency room with severe and sharp abdominal pain on June 2, 2019 (*Id.*, ¶ 3). Ms. Ward was treated and released from the emergency room and directed to see her primary care physician; her primary care physician immediately admitted her to CrossRidge Hospital (*Id.*).  Ms. Ward called Boar's Head and reported her inability to come to work to HR at Boar's Head (*Id.*). Additionally, Ms. Ward's fiancée, John Steverson, asked HR to credit Ms. Ward with two of his vacation days so as to offset June 3 and June 4, the two days that Ms. Ward was hospitalized at CrossRidge (*Id.*, ¶ 9).  Ms. Ward's condition worsened, and she was transferred to St. Bernard's Hospital in Jonesboro, Arkansas, on June 5, 2019 (*Id.*, ¶ 3).  Each day that she was absent, Ms. Ward notified HR at Boar's Head prior to the end of her shift, as was required by Boar's Head (*Id.*).  Also on June 5, 2019, Ms. Ward informed a woman named Wendy in HR that she was going to have to undergo surgery and be out for some time, and Wendy informed Ms. Ward that she would not have to call back since HR now knew that she was going to be hospitalized (*Id.*, ¶ 9).

Ms. Ward experienced complications at St. Bernard's which led to her undergoing surgery on June 10, 2019 (*Id.*, ¶¶ 4-5).  Each day that Ms. Ward was absent, she or Mr. Steverson called HR at Boar's Head to report that she would not be present, and Ms. Ward called Boar's Head prior to her surgery to advise it of her condition and why she was absent (*Id.*, ¶ 5).  On June 11, 2019, Ms. Ward called Boar's Head to advise that she had undergone surgery and would be absent from work for some time after her discharge (*Id.*, ¶ 6).

Upon her discharge on June 18, 2019, a nurse informed Ms. Ward that her insurance had been cancelled by Boar's Head due to her allegedly not having called in sick (*Id.*).  Ms. Ward called Ms. Byers, who worked in HR at Boar's Head but was told that Ms. Byers was busy (*Id.*). Mr. Steverson went to see Ms. Byers to ask if Ms. Ward's insurance could be reinstated, but Ms. Byers told him that it could not be reinstated because Ms. Ward had already been terminated (*Id.*). Plaintiffs assert that either Ms. Drone or Ms. Byers stated that Ms. Ward failed to call and advise that she would be absent on either June 10 or June 11 (*Id.*).  Mr. Steverson offered to show a screenshot proving that Ms. Ward had called on both June 10 and June 11, but Ms. Drone and Ms. Byers demurred (*Id.*, ¶¶ 6, 10).  Ms. Ward repeatedly attempted to call Tim Botham, the plant manager, regarding her situation, but she was unsuccessful (*Id.*, ¶ 7).

Plaintiffs allege that Ms. Ward was entitled to be free from discrimination "because . . . the presence of any sensory, mental, or physical disability is recognized as and declared to be a civil right" under Arkansas Code Annotated § 16-123-107(a) (*Id.*, ¶ 11).  Plaintiffs allege that Ms. Ward was operating under a disability—and defendants regarded her as having a disability—when defendants discriminated against her by firing her and terminating her insurance and other benefits (*Id.*, ¶ 12).  Plaintiffs maintain that defendants discriminated against Ms. Ward "by failing to provide her reasonable accommodation under the circumstances and by firing her, after her

discharge from the hospital" (*Id.*).  Plaintiffs allege that defendants violated Ms. Ward's right to obtain and hold employment without discrimination in violation of Arkansas Code Annotated § 16-123-102(3) and refused to provide reasonable accommodation in violation of Arkansas Code Annotated § 16-123-107(a) (*Id.*, ¶ 13).

As a result of defendants' alleged violations, plaintiffs allege that Ms. Ward has lost a significant sum of income in the past and will continue to do so in the future; stands unable to pay the medical bills she incurred for her treatment and surgery; has lost the fringe benefits of her employment; remains unable to procure employment due to her having been fired by Boar's Head; remains unable to pay her bills, which has caused chaos in her life; and has incurred and will incur substantial attorneys' fees (*Id.*, ¶ 14).

## II.    Analysis

Defendants move to dismiss plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) "because the Complaint fails to state facts that plausibly suggest that an ACRA violation or unlawful discrimination occurred as to either Plaintiff" (Dkt. No. 3, ¶ 2).  Defendants argue that the ACRA does not require private employers to make reasonable accommodations for disabled employees and that, as a result, plaintiffs' failure to accommodate claims fail to state a cause of action for which relief may be granted (*Id.*, ¶ 3).  Defendants also argue based on the facts asserted in the complaint that plaintiffs' alleged medical conditions are not covered disabilities under the ACRA and that plaintiffs are not entitled to protections from any alleged disability discrimination (*Id.*, ¶ 4).  Defendants maintain that individual supervisor liability of the sort asserted against Ms. Drone and Ms. Byers is undisputedly barred under the ACRA pursuant to Arkansas Code Annotated § 16-123-107(c)(1)(A) (*Id.*, ¶ 5).  Defendants assert that plaintiffs'

claims under the *respondeat superior* doctrine cannot survive as plaintiffs have alleged no intentional tort committed by Ms. Drone or Ms. Byers (*Id.*, ¶ 6).

Should the Court decline to dismiss all of plaintiffs' claims, defendants maintain that plaintiffs' claims should be severed as Ms. Cochran's and Ms. Ward's claims do not arise out of the same transaction or occurrence and stem from separate and unrelated fact patterns (*Id.*, ¶ 8). Defendants assert that joinder of these two individual alleged discrimination cases is improper under Federal Rule of Civil Procedure 20 and that plaintiffs' claims should be severed in accordance with Federal Rule of Civil Procedure 21 (*Id.*). In the alternative, defendants cite Federal Rule of Civil Procedure 42(b) and ask the Court to order separate trials or "mini-trials" in the interest of justice and in order to avoid the significant potential for prejudice against Boar's Head that would result if plaintiffs' cases were presented simultaneously (*Id.*, ¶ 9).

In response, plaintiffs maintain that their complaint is properly pleaded (Dkt. No. 10, at 3-12). Plaintiffs argue that wrongful termination is explicitly actionable under the ACRA and that they have alleged adequate facts to support a disability under the ACRA (*Id.*, at 4-12). Plaintiffs argue that their complaint demonstrates a *prima facie* claim for disability discrimination, including a *prima facie* case that plaintiffs were disabled under the ACRA and fired as a result (*Id.*, at 6-12). Further, plaintiffs argue that Ms. Drone and Ms. Byers' actions should be imputed to Boar's Head under the doctrine of *respondeat superior* (*Id.*, at 13-14). Additionally, plaintiffs assert that their claims are properly joined under Federal Rule of Civil Procedure 20 (*Id.*, at 14-18). Finally, plaintiffs argue that defendants fail to suggest how they might be prejudiced absent severance of claims or the ordering of separate trials (*Id.*, at 18-19).

A.      **Motion To Dismiss**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).   "While a complaint attacked by a [Federal] Rule [of Civil Procedure] 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted).   "[T]he complaint must contain facts which state a claim as a matter of law and must not be conclusory." *Briehl v. General Motors Corp.*, 172 F.3d 623, 627 (8th Cir. 1999) (citing *Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995)).   "When ruling on a motion to dismiss, the district court must accept the allegations contained in the complaint as true and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001). A complaint in an employment discrimination lawsuit need not contain specific facts establishing a *prima facie* case of discrimination.   *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-12 (2002).   Courts ruling on motions to dismiss in these contexts do not "require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. 544, at 569-70.

### 1.  Disability Discrimination Under The ACRA

The ACRA prohibits discrimination by employers on the basis of "race, religion, national origin, gender, or the presence of any sensory, mental, or physical disability."  Ark. Code Ann. § 16-123-107(a)(1).  With this protection, "otherwise qualified person[s]," including those with disabilities, have "[t]he right to obtain and hold employment without discrimination."  *Id.*  The ACRA defines "disability" as "a physical or mental impairment that substantially limits a major life function."  Ark. Code Ann. § 16-123-102(3).  Violations of the ACRA are evaluated under the Title VII discrimination framework and relevant federal case law and regulations prohibiting disparate treatment.  *See McCullough v. Univ. of Ark. for Med. Scis.*, 559 F.3d 855, 860 (8th Cir. 2009) (noting that Title VII and ACRA claims "are governed by the same standards"); *see also Rinchuso v. Brookshire Grocery Co.*, 944 F.3d 725, 729 (8th Cir. 2019) (citing *Greenlee v. J.B. Hunt Transp. Servs.*, 342 S.W.3d 274, 277-79 (Ark. 2009)).  For claims of disability discrimination, courts "analyze a disability claim presented under the ACRA using the same principles employed in analyzing claims under the Americans with Disabilities Act ('ADA'), 42 U.S.C. § 12101 *et seq.*"  *Duty v. Norton–Alcoa Proppants*, 293 F.3d 481, 490 (8th Cir. 2002) (citations omitted).

The ADA prohibits employers from discriminating against a disabled individual qualified for a job because of such individual's disability.  *See* 42 U.S.C. § 12112(a).  In order to obtain relief under the ADA, a plaintiff must show that:  (1) she is a "qualified individual" under the ADA, (2) she suffered discrimination as the term is defined by the ADA, and (3) the discrimination was based on disability as defined by the ADA.  *See Brown v. City of Jacksonville*, 711 F.3d 883, 888 (8th Cir. 2013).  A "qualified individual" is a person with a qualifying disability who can "perform the essential functions of the employment position . . . with or without reasonable

8

accommodation." 42 U.S.C. § 12111(8).  Additionally, "'discriminat[ion]' under the ADA, means an 'adverse employment action.'"  *Brown*, 711 F.3d at 888 (quoting *Bensons v. Nw. Airlines, Inc.*, 62 F.3d 1108, 1112 (8th Cir. 1995)).

Defendants argue that plaintiffs' disability discrimination claims—namely, plaintiffs' claims of discriminatory termination—must be dismissed because plaintiffs were not disabled under the ACRA (Dkt. No. 4, at 7-12).  Defendants assert that plaintiffs "state in a conclusory fashion that they operated under disabilities and that defendants regarded them as having disabilities to demonstrate their terminations were unlawful" without "demonstrating how and what major life functions were impaired" (*Id.*, at 7).  In doing so, defendants claim that plaintiffs "failed to allege sufficient facts to show that either of them were disabled within the meaning of the ACRA" (*Id.*, at 7-8).  Defendants state that plaintiffs have "alleged medical conditions that were temporary impairments, similar to that of appendicitis, concussions, and sprained joints," and that "[s]uch conditions are not disabilities within the meaning of the ACRA" (*Id.*, at 10).  Plaintiffs assert that they have alleged adequate facts to support a finding that they were disabled under the ACRA (Dkt. No. 10, at 5-12).  Plaintiffs maintain that they are actually disabled under the ACRA rather than merely "regarded as" disabled by defendants (*Id.*).

Under the ACRA, a plaintiff must be actually disabled as opposed to merely "regarded as" disabled by her employer.  *Compare Wang v. Walmart Stores, Inc.*, 424 Fed. App'x 608, 609 (8th Cir. 2011), *and Faulkner v. Ark. Children's Hosp.*, 69 S.W.3d 393, 400-02 (Ark. 2002), *with* 42 U.S.C. § 12102.  The Court understands plaintiffs to allege that Ms. Cochran and Ms. Ward both had actual disabilities as defined by the ADA and ACRA rather than that defendants merely regarded plaintiffs as being disabled.  To the extent plaintiffs' claims rely on allegations that

plaintiffs were "regard as" as disabled by plaintiffs, such claims are not actionable under the ACRA and are therefore dismissed.

The definition of disability "is virtually the same in both [the ADA and ACRA]: substantial limitation in a major life activity." *Faulkner*, 69 S.W.3d at 401; *see also* 29 C.F.R. Pt. 1630, App. ("[A]n impairment is a disability if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population."). "'Major life activities' includes 'caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working,'" *Conant v. City of Hibbing*, 271 F.3d 782, 784 (8th Cir. 2001) (per curiam) (quoting 29 C.F.R. § 1630.2(i)), as well as "the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions," 42 U.S.C. § 12102(2)(B). Though the ADA and the ACRA have broad definitions of disability, "not every impairment will constitute a disability within the meaning of [the ADA and its regulations]." *See* 29 C.F.R. § 1630.2(j)(1)(ii).

Plaintiffs claim that Ms. Cochran alleged a chronic or remitting/relapsing condition that qualifies as a "physical or mental impairment" because it is a "physiological . . . condition . . . or anatomical loss affecting one or more body systems," including Ms. Cochran's neurological and musculoskeletal systems (Dkt. No. 10, at 11). 29 C.F.R. § 1630.2(h)(1). Accepting the factual allegations in the complaint as true, the Court concludes that plaintiffs have presented sufficient allegations to support a finding that Ms. Cochran had an actual disability under the ACRA. At this stage of the litigation, the Court determines that plaintiffs have plead plausibly that Ms. Cochran is actually disabled under the ACRA.

Regarding Ms. Ward, plaintiffs claim that Ms. Ward alleged a chronic or remitting/relapsing condition that qualifies as a "physical or mental impairment" because it is a "physiological . . . condition . . . or anatomical loss affecting one or more body systems," including Ms. Ward's neurological, reproductive, digestive, and musculoskeletal systems (Dkt. No. 10, at 9). 29 C.F.R. § 1630.2(h)(1); *see also Otting v. J.C. Penney Co.*, 223 F.3d 704, 708 (8th Cir. 2000). Accepting the factual allegations in the complaint as true, the Court concludes that plaintiffs have presented sufficient allegations to support a finding that Ms. Ward had an actual disability under the ACRA. At this stage of the litigation, the Court determines that plaintiffs have plead plausibly that Ms. Ward is actually disabled under the ACRA.

Accordingly, the Court denies defendants' motion to dismiss to the extent it argues that plaintiffs are not actually disabled under the ACRA. To the extent plaintiffs' claims rely on allegations that plaintiffs were "regard as" as disabled by plaintiffs, such claims are not actionable under the ACRA and are therefore dismissed.

### 2.       Failure To Accommodate

Defendants claim that plaintiffs' failure to accommodate claims should be dismissed because the ACRA does not include a reasonable accommodation provision (Dkt. No. 4, at 5-7). In support of this argument, defendants cite two unpublished cases from Arkansas federal district courts dating from 2001 and 2002. *See, e.g., Dunlap v. Green Bay Packaging*, No. 4:01CV00398, at *2 (E.D. Ark. Oct. 1, 2002) (finding that "the ACRA contains no express provision for a cause of action based upon failure to accommodate" and that "expand[ing]" the ACRA to include such a cause of action would be "akin to legislating"); *McAvoy v. Wal-Mart Assocs., Inc.*, No. 00-1092, at *6 (W.D. Ark. July 26, 2001) ("In any event, the ACRA, unlike the ADA, has no provision requiring employers to provide a reasonable accommodation.").

However, the Eighth Circuit Court of Appeals has made clear that courts are to "analyze a disability claim presented under the ACRA using the same principles employed in analyzing claims under the [ADA]." *Duty v. Norton–Alcoa Proppants,* 293 F.3d 481, 490 (8th Cir. 2002). Further, in *Battle v. United Parcel Service, Inc.*, 438 F.3d 856, 860–61 (8th Cir. 2006), the Eighth Circuit examined defendant UPS's arguments on appeal regarding the denial of its post-trial motion for judgment as a matter of law on the failure-to-accommodate claims under the ADA and ACRA, again determining that ADA and ACRA claims are reviewed under the same principles. *Id.* (citing *Duty v. Norton–Alcoa Proppants,* 293 F.3d 481, 490 (8th Cir. 2002); *Greer v. Emerson Elec. Co.,* 185 F.3d 917, 920–21 (8th Cir. 1999)). Likewise, in *Huber v. Wal-Mart Stores, Inc.*, 486 F.3d 480, 482 (8th Cir. 2007), the Eighth Circuit examined under the ADA and ACRA whether, when because of her disability plaintiff Huber sought, as a reasonable accommodation, reassignment to a router position, which the parties stipulated was a vacant and equivalent position under the ADA, it was appropriate for defendant Wal–Mart not to agree to reassign Huber automatically to the router position. *Id.* at 481. In *Johnson v. Windstream Communications, Inc.*, 545 S.W.3d 234 (Ark. Ct. App. 2018), the Arkansas Court of Appeals acknowledged that a former employee brought claims for alleged violations of the ADA and ACRA and proceeded to examine arguments on appeal regarding jury instructions given with respect to a failure-to-accommodate claim based on disability. The Arkansas Court of Appeals in *Johnson* was silent as to whether the ACRA provides for such a claim, proceeding to examine the claim under ADA principles.

The Court acknowledges that plaintiffs do not specifically respond in their briefing to defendants' arguments regarding plaintiffs' failure to accommodate claims under the ACRA. At this stage of the litigation and based on the limited briefing from the parties, the Court is reluctant

12

to grant defendants' motion to dismiss as it pertains to plaintiffs' reasonable accommodation claims under the ACRA.

### 3. Plaintiffs' Individual Capacity Claims Against Ms. Drone And Ms. Byers

Next, defendants argue that plaintiffs' individual capacity claims against Ms. Drone and Ms. Byers under the ACRA must be dismissed because ACRA claims can only be brought against an employer (Dkt. No. 4, at 12-13).  In their response, plaintiffs do not appear to dispute this argument (Dkt. No. 10).  The law on this point accords with defendants' contention.  The ACRA provides that "[a]ny individual who is injured by employment discrimination by an employer in violation of subdivision (a)(1) of this section"—the subdivision under which plaintiffs prosecute this action—"shall have a civil action against the employer only in a court of competent jurisdiction."  Ark. Code Ann. § 16-123-107(c)(1)(A).  The ACRA defines an "employer" as "a person who employs nine (9) or more employees in the State of Arkansas in each of twenty (20) or more calendar weeks in the current or preceding calendar year."  Ark. Code Ann. § 16-123-102(5).  Neither Ms. Drone nor Ms. Byers were plaintiffs' "employer" within the ACRA's definition of the term, and the ACRA makes clear that plaintiffs may only bring employment-related discrimination claims against their employer under the ACRA.  *See id.*

Accordingly, the Court grants defendants' motion to dismiss as it pertains to plaintiffs' claims against Ms. Drone and Ms. Byers as individual defendants.[1]  Accordingly, the Court dismisses Ms. Drone and Ms. Byers as individual defendants in this action.

---

[1] Under 28 U.S.C. § 1441(a), "any civil action brought in a State court . . . may be removed by the defendant or the defendants" as long as federal district courts would have "original jurisdiction" over the case.  Such jurisdiction comes in two varieties.  Federal courts have "federal question jurisdiction" if the case "aris[es] under" federal law.  28 U.S.C. § 1331.  Even when the plaintiff brings only state-law claims—alleging a breach of a contract, for example—federal courts have "diversity jurisdiction" if the amount in controversy exceeds $75,000.00 and there is

### 4.    *Respondeat Superior*

Next, defendants argue that plaintiffs' claims under the *respondeat superior* doctrine cannot be maintained as plaintiffs have not alleged any intentional torts committed by Ms. Drone and Ms. Byers (Dkt. No. 4, at 13).  Plaintiffs assert that the acts of Ms. Drone and Ms. Byers are imputed to Boar's Head under the doctrine of *respondeat superior*, though they do not cite any case law in support of this contention (Dkt. No. 10, at 13-14).

The Arkansas Supreme Court has determined that "[t]he doctrine of *respondeat superior* is not a basis for liability under the Arkansas Civil Rights Act."  *City of Little Rock v. Nelson as Next Friend of Nelson*, 592 S.W.3d 633, 641 (Ark. 2020) (citing *Jones v. Huckabee*, 250 S.W.3d 241, 246 (Ark. 2007)).  Plaintiffs also name as a defendant Boar's Head, and Boar's Head is a proper defendant under the ACRA for plaintiffs' claims of disability discrimination, which the Court does not dismiss at this stage of the litigation.

### B.    Motion To Sever

Defendants maintain that, to the extent the Court does not dismiss all of plaintiffs' claims, plaintiffs' remaining claims should be severed (Dkt. No. 3, ¶ 8).  Defendants assert that Ms. Cochran's and Ms. Ward's claims "do not arise out of the same transaction, or occurrence, or series of the same transactions or occurrences" (*Id.*).  Defendants state that "[t]he two matters stem from

---

complete diversity of parties, meaning that no plaintiff is a citizen of the same State as any defendant.  28 U.S.C. § 1332(a); *Lincoln Property Co. v. Roche*, 546 U. S. 81, 89 (2005).  While § 1441 normally allows removal of either kind of case, it bars removal in diversity cases where "any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." § 1441(b)(2).  The Court notes that  Ms. Drone and Ms. Byers are both Arkansas citizens (Dkt. No. 1, ¶ 2).  However, because plaintiffs assert no colorable claims against Ms. Drone and Ms. Byers as individual defendants, the § 1441(b)(2) prohibition on removal in diversity cases brought in the home state of any defendant does not apply.

entirely separate fact patterns and are wholly unrelated" and that "joinder of these two individual alleged discrimination cases is improper" (*Id.*).  Defendants believe plaintiffs' claims should be severed in accordance with Federal Rule of Civil Procedure 21 and insist that each plaintiff should then proceed separately and individually (*Id.*).  In the alternative, defendants posit that the Court should order separate trials or "mini-trials" in order to avoid the significant potential for prejudice against defendants that would result if plaintiffs' cases were presented simultaneously (*Id.*, ¶ 9).

In response, plaintiffs maintain that joinder is appropriate in this action (Dkt. No. 10, at 14-19).  Plaintiffs argue that defendants' treatment of them was essentially a "mirror image" in that both plaintiffs were hospitalized, gave notice that they would not be at work, had their health insurance cancelled immediately, and were fired (*Id.*, at 14).  Plaintiffs maintain that their claims feature both commonality of fact and commonality of law (*Id.*, at 14-18).  Additionally, plaintiffs maintain that prosecuting this action as joined plaintiffs would avoid prejudice and delay, ensure judicial economy, and safeguard principles of fundamental fairness (*Id.*, at 14-15).  Finally, plaintiffs argue that defendants fail to suggest or show how they might be prejudiced by plaintiffs remaining joined in this action (*Id.*, at 18-19).

### 1.    Federal Rules Of Civil Procedure 20 And 21

Federal Rule of Civil Procedure 20(a)(1) "allows multiple plaintiffs to join in a single action if (i) they assert claims 'with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences;' and (ii) 'any question of law or fact common to all plaintiffs will arise in the action.'"  *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 622 (8th Cir. 2010) (quoting Fed. R. Civ. P. 20(a)(1)).  "In construing Rule 20, the Eighth Circuit has provided a very broad definition for the term 'transaction.'"  *Id.*  No hard and fast rules have been established

under Rule 20 regarding what constitutes a transaction, but the Eighth Circuit has offered the following guidance:

> "Transaction" is a word of flexible meaning.  It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship.  Accordingly, all "logically related" events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence.  The analogous interpretation of the terms as used in Rule 20 would permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding.  Absolute identity of all events is unnecessary.

*Id.* (quoting *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974)); *see also* 7 Charles A. Wright et al., *Federal Practice and Procedure*, § 1653, at 415 (3d ed. 2001) (explaining that the transaction or occurrence requirement prescribed by Rule 20(a) is not a rigid test and is meant to be "read as broadly as possible whenever doing so is likely to promote judicial economy."). "Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties, and remedies is strongly encouraged."  *Mosley*, 497 F.2d at 1332-33 (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966)).

If the parties are improperly joined, the Court "may at any time, on just terms, add or drop a party," and "may also sever any claim against a party."  Fed. R. Civ. P. 21.  It is "permissible to sever [plaintiffs'] claims into separate actions because of the need to avoid possible confusion or substantial prejudice."  *Strandlund v. Hawley*, 532 F.3d 741, 746 (8th Cir. 2008).  "[W]hen a court 'severs' a claim against a defendant under Rule 21, the suit simply continues against the severed defendant in another guise."  *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006) (citations omitted); *see also United States v. O'Neil*, 709 F.2d 361, 368 (5th Cir. 1983) ("Where a single claim is severed out of a suit, it proceeds as a discrete, independent action, and a court may render a final, appealable judgment in either one of the resulting two actions notwithstanding the

continued existence of unresolved claims in the other."). A district court's decision to sever claims into separate actions is reviewed for abuse of discretion. *See Reinholdson v. Minnesota*, 346 F.3d 847, 850 (8th Cir. 2003) (citing *Mosley,* 497 F.2d at 1332).

### 2.    Analysis

After considering the Rule 20 joinder standards, the Court concludes that defendants have not established that plaintiffs' claims are egregiously misjoined and require severance. On the record before the Court, the Court considers the factual allegations underlying Ms. Cochran's and Ms. Ward's claims to be "logically related." Plaintiffs' claims arise from hospitalizations that led to alleged disability discrimination and plaintiffs' ultimate terminations. Both plaintiffs were hospitalized, engaged with HR at Boar's Head, and were terminated in a manner that plaintiffs allege represents impermissible disability discrimination under the ACRA. In particular, both plaintiffs were fired for allegedly violating Boar's Head's attendance policy, which both plaintiffs assert is not the true reason they were fired. Given the broad guidance offered by the Eighth Circuit, the Court considers plaintiffs' claims to arise out of the same transaction or occurrence or series of transactions and occurrences.

Accordingly, the Court denies without prejudice defendants' motion to the extent it seeks to sever plaintiffs' claims (Dkt. No. 3). If, as this case develops, additional facts or circumstances arise that show separate trials may be warranted, defendants may renew their motion to sever plaintiffs' claims

### C.    Motion For Separate Trials

As a final alternative, defendants ask the Court to order separate trials, or in the alternative, "mini-trials," in order to avoid prejudice to Boar's Head resulting from plaintiffs' cases being presented simultaneously (Dkt. No. 4, at 16). Defendants maintain that the Court may be forced

17

to admit evidence it would otherwise exclude and instruct the jury that the evidence can be considered only in support of a particular plaintiff's claim and cannot be considered in the claims of the other plaintiff (*Id.*, at 17).  Defendants argue that plaintiffs' claims involve different factual situations, different positions, and different time periods and that a single trial would require the jury to keep separate each plaintiff's individualized claims and circumstances (*Id.*).  Given this combination of factors, defendants contend that a single trial of plaintiffs' claims would impose substantial prejudice (*Id.*, at 17-18).  Plaintiffs argue that defendants fail to demonstrate how they might be prejudiced by proceeding with a single trial in this action (Dkt. No. 10, at 18).  Plaintiffs claim that members of the jury would be able to keep track of the facts in of both plaintiffs' cases (*Id.*, at 19).

### 1.     Federal Rule Of Civil Procedure 42(b)

Rule 42(b) provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims."  Fed. R. Civ. P. 42(b).  "When ordering a separate trial, the court must preserve any federal right to a jury trial."  *Id.*  Under Rule 42(b), a court has discretion to order separate trials or make other orders to prevent delay or prejudice.  *See Mosley*, 497 F.2d at 1332.  The party seeking separate trials has the burden of showing that separate trials will promote convenience, expedite the proceedings, or avoid unfair prejudice.  *See Langrell v. Union Pac. R.R. Co.*, No. 5:12CV00084 JLH, 2012 WL 3041312, at *2 (E.D. Ark. July 25, 2012).  In deciding a motion for separate trials, "a court should consider the interests of judicial economy and avoiding confusion."  *Koch Fuels, Inc. v. Cargo of 13,000 Barrels of No. 2 Oil,* 704 F.2d 1038, 1042 (8th Cir. 1983).

### 2.      Analysis

In this case, defendants assert that they will suffer undue prejudice if plaintiffs' cases are presented simultaneously.  Ms. Cochran and Ms. Ward both allege that they were fired due to disability discrimination after separate hospitalizations and communications with HR at Boar's Head.  The Court concludes based on the materials before it that defendants have not met their burden to show that trying these claims separately will promote convenience, expedite the proceedings, or avoid unfair prejudice.  At this stage of the litigation, there is insufficient record evidence to demonstrate that plaintiffs' claims are so different that separate trials are necessary. The Court can make evidentiary decisions as they arise, and defendants' concerns regarding evidentiary matters in this case are based on speculation at this point rather than concrete evidence that has been discovered or that they expect to be discovered in this case.  Further, the Court is confident that issues of proof pertaining to plaintiffs' individualized claims can be adequately addressed by appropriate jury instructions.

Accordingly, the Court denies without prejudice defendants' motion to the extent it seeks separate trials, or in the alternative, "mini-trials" (Dkt. No. 3).  If, as this case develops, additional facts or circumstances arise that show separate trials may be warranted, defendants may renew their motion for separate trials.

### III.    Conclusion

For the above reasons, the Court grants, in part, and denies, in part, defendants' motion to dismiss (Dkt. No. 3).  It is therefore ordered that:

1.      Plaintiffs may proceed with their claims against defendant Boar's Head that they were fired due to disability discrimination claim under the ACRA;

2.      at this stage of the litigation, for the reasons explained, the Court declines to dismiss plaintiffs' failure to accommodate claims under the ACRA;

3.      Plaintiffs' individual capacity claims against Ms. Drone and Ms. Byers are dismissed;

4.      Defendants' motion to sever plaintiffs' claims is denied without prejudice; and

5.      Defendants' motion for separate trials, or in the alternative "mini-trials," is denied without prejudice.

So ordered this 10th day of February, 2021.


_____
Kristine G. Baker
United States District Judge